Weygandt, C. J.
The gravamen of the relator’s complaint in his petition is that the respondent was *255 appointed illegally for the reason that he received the vote of only three of the five-memher county board of education, and one of the three was not qualified.
The alleged lack of qualification of the one board member is based on a series of events.
For some months in the year 1953, there was a vacancy on the county board of education due to the resignation of one member. Under the provisions of. Section 4846, General Code (Section 3313.85, Revised Code), it was the duty of the remaining four board members to fill the vacancy. However, dissension among the four prevented the selection of a new board member.
Under the provisions of amended Section 3313.85, Revised Code, it became the duty of the Court of Probate to fill the vacancy upon failure of the remaining members of the board to do so. The pertinent part of the language reads:
“If the board of education of any city, exempted village or county school district fails to perform the duties imposed upon it or fails to fill a vacancy in such board within a period of 30 days after such vacancy occurs, the Probate Court of the county in which such district is located, upon being advised and satisfied of such failure, shall act as such board and perform all duties imposed upon such board. ’ ’
Acting on this authority, the Court of Probate on October 3,1953, filled the board vacancy by appointing thereto a man named Ankrim who accepted the appointment and proceeded to serve as a member.
Some weeks later on November 30, 1953, the superintendent of the county schools resigned. On the same day the board of education filled the vacancy by appointing the respondent superintendent for a term ending July 31, 1958. Three of the five board members voted in favor of the respondent. Ankrim, the new member, was one of the three.
*256 Later, on June 26, 1954, after a change in the personnel of the board, the relator claims he was appointed to the office of county superintendent in place of the respondent.
The relator insists that Ankrim’s appointment as a board member on October 3, 1953, was invalid for the reason that the Revised Code became - effective three days previously on October 1, and that the Court of Probate was without authority to act until the statutory period of 30 days had elapsed after the effective date of the recodification and amendment.
One answer to the relator’s contention is that the statute contains no requirement that the 30-day period must elapse after the effective date of the recodification and amendment. The plain provision of the statute is simply 30 days after the occurrence of such “vacancy.” In the relator’s petition he alleges that the board vacancy had existed “several months.” Hence, the 30-day requirement of the statute was not violated when the Court of Probate filled the vacancy by appointing Ankrim on October 3, 1953.
The relator’s second contention is that, even though the Court of Probate had authority to appoint Ankrim a member of the board on October 3,1953, the appointment could not be effective beyond the next regular municipal election which in this instance occurred approximately a month later in November. This claim is based on the fact that, on the date Ankrim was appointed, Section 3313-11, Revised Code, provided for filling such board vacancy “until the next regular municipal election, at which time a member shall be elected to serve the unexpired term.” Then several weeks later on October 21, an amendment to this statute became effective. It now provides for filling such board vacancy “for the unexpired term.” Because Ankrim was appointed before the effective date of the amendment, the relator contends that the appointment' lapsed *257 on election day, as provided by the previous statute, and that hence Ankrim was no longer a board member when the respondent was appointed superintendent by the vote of three members of the board-—including Ankrim—on November 30.
To this contention of the relator the respondent offers several pertinent comments. One of these is that, irrespective of which statute determined the duration of Ankrim’s service as a de jure board member, he was at least a de facto member after the November election and hence entitled to vote in favor of the appointment of the respondent as superintendent on November 30.
' This court concurs in that view.
The Court of Probate was acting within its authority when it appointed Ankrim a member of the county board on October 3, 1953; Ankrim accepted the appointment; under color of authority he continued to discharge the duties of the office for the unexpired term; it is alleged that two board members protested against his incumbency; there is no allegation of protest on the part of the other two board members; there is no allegation that anyone was elected or was even a candidate for the unexpired term; except for his vote in favor of the respondent, there is no allegation that any of Ankrim’s official actions have been attacked; nor is there a claim that some other person was entitled to the office for the unexpired term.
It has been said that the doctrine of de facto officers rests on the principle of protection to the interests of the public and third parties, not to protect or vindicate the acts or rights of the particular de facto officer or the claims or rights of rival claimants to the particular office. The law validates the acts of de facto officers as to the public and third persons on the ground that, although not officers de jure, they are, in virtue of the particular circumstances, officers in fact whose acts *258 public policy requires should be considered valid. 43 American Jurisprudence, 225, Section 470.
The instant case provides a typical example of such a situation. For months the Board of Education of Lawrence County had failed to perform its duty to fill the existing vacancy in its membership. The appointment of Ankrim enabled the board to function again, and this resulted in the selection of the respondent for the office of superintendent.
Under the circumstances the respondent’s demurrer to the relator’s petition is sustained and the writ of quo warranto is denied.

Writ denied.

Middleton, Taet, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.